ORIN SHURTLIFF *vs.* MARY WITHERSPOON.

An administrator is entitled to commissions upon the amount of sales of real
estate, made by him under an order of the probate court; the allowance should
be made to extend to the whole estate administered.

APPEAL from the probate court of Franklin county.

The appellant, upon the final settlement of his accounts as administrator of the estate of James A. Witherspoon, claimed commissions on $9001, the amount of the sales of the real estate of decedent, sold by him under an order of court. The appellee, widow of Elias M. Witherspoon, deceased, who, at the time of his death was the sole heir of James M. Witherspoon, objected to the allowance of any commissions on said sum, upon the ground that the law does not authorize the court to make such allowance. The court sustained the objection and refused to make the allowance, to which the appellee excepted, and now brings the case up by appeal.

*Oscar J. E. Stewart,* for appellant.

This is an appeal from the decision of the probate court of Franklin county, refusing to allow the appellant, in his final settlement with said court, as administrator, of all and singular, the goods and chattels, rights and credits, which were of James A. Witherspoon, deceased, commissions on $9001, the amount of the sale of the real estate of said decedent, sold by the said administrator by virtue of orders of said probate court, as appeared by the records of said court, of the account of sales rendered by said appellant, as administrator. The statute provides, that the court shall allow to an executor, administrator, or collector, on the final settlement of his account, such compensation as shall appear to said court reasonable and just, for his trouble in administering the estate of the testator, or intestate, not less than one, nor more than ten per centum on the appraised

value of such estate.    See How. & Hutch. Dig. p. 415, § 96 and 101.    We contend that, under the statute, an executor, administrator, or collector, is not alone entitled as a compensation for his trouble in the administration, to commissions on such chattels as bear no internal evidence, or external marks of specific and fixed value, but which have to be appraised in dollars and cents, and thereby measured by a certain standard of value fixed by law; but on accounts, notes, and all other evidences of debt, which on their face proclaim their nominal value; and also on the money of the deceased, which is the lawful standard and measure of value, and requires no appraisment.

By virtue of his trust, an administrator's authority, duty, and responsibility extends to all and singular, the goods and chattels, rights and credits of every description of his intestate; he gives bond for the faithful administration of all, and is thus responsible for all; he has to administer all, and hence he has more or less trouble with all, and the law allows him a reasonable and just compensation for his trouble in administering the estate.

When a probate court orders the real estate of a testator, or intestate, to be sold for the payment of those debts, which the personal estate is insufficient to pay, and an executor, or administrator, acting in conformity with the decree of the court, sells such real estate, and reports the amount thereof, as converted into a chattel, he thereby returns an additional inventory of the personal estate, which he could not return before the event of the sale, because the property embraced in such additional inventory, was real estate before the sale, and became converted into personal estate by the sale.    By the statute of 1821, see How. & Hutch. Dig. p. 408, § 77, an executor or administrator was not required to give another bond so as to embrace the amount of chattels, which would, by the sale, come into his hands to be administered.    By an examination of the act of 1821, it appears the legislature considered that the chattels of the estate accruing to such estate by the sale of lands, were embraced in the bond given by the administrator, as they were by his oath to make a true and perfect inventory of the goods, chattels, and credits of the deceased, to well and truly administer

all and singular of them, pay the debts of the deceased as far as they would extend, and make a just account thereof when thereto required, &c., for the legislature did not by that act require an executor or administrator to give an additional bond for accounting, and for the correct application of the proceeds of the land, so ordered by the orphans' court to be sold. The 96 §, p. 414 of H. & H. Dig. before recited, is part of the act of 1821. The legislature, however, by the act of December 16, 1830, (see How. & Hutch. Dig. p. 418–19, § 113–14,) enlarging the powers of the orphans' court, so as to sell the lands of a testator or intestate, upon other contingencies than that of insufficiency of assets to pay the debts of the deceased; considering that notwithstanding an executor, or administrator, was bound by the terms of his bond, to make a true and perfect inventory of all and singular, the goods, chattels, and credits of the deceased; yet knowing that the penalty of the bond taken by the orphans' court, from an executor or administrator at the time of granting him letters, was taken in reference to the amount of such goods, chattels, and credits, existing as such at the time of the death of the decedent, and as by the provisions of the law authorizing the sale of the real estate, the chattels of the estate were increased beyond the amount at the time of taking the bond, and might, probably, in some instances, be increased beyond the amount of the penalty of the bond, in order to provide a proper indemnity to those interested in the estate, they enacted, that in case lands should be ordered to be sold, according to the provisions of the last recited act, that "the said court, at the time of ordering the sale of any such lands, tenements and hereditaments as aforesaid, shall take bond, with good and sufficient security, from the executor or administrator for any such sale, in sufficient penalty conditioned, to apply the proceeds of said sale in the same way the lands, tenements, or hereditaments would have descended, been applied or appropriated, if no such order of sale had been made. So by the act of 1830, the proceeds of the land are regarded as chattels as they are by common law, and as such, the executor or administrator would be bound to make an inventory of them, even had the legislature

omitted to require such executor or administrator, making such sale, to make a report in writing, of all the proceedings thereon, to the next orphans' court after such sale. And as the proceeds are inventoried assets, and as such, he is under as great a responsibility for their correct administration, and has the same trouble, as with the assets embraced in the original inventory, he is as much entitled to a reasonable and just compensation for his trouble in administering such additional assets arising from the sale of the land, as he is for administering the assets embraced in the original inventory. The proceeds of the sale are additional assets, which have come to the knowledge and possession of the plaintiff in error, as administrator, after he had returned the original inventory, which he was bound by his oath and bond to render to the probate court, independent of the provision in the statute, requiring him to report in writing to the ensuing orphans' court, all his proceedings in regard to the sale, in order to make a true and perfect inventory, of all and singular, the goods, chattels and credits of the deceased. And a failure on his part to make such inventory, would have been a breach of his bond as administrator. It will certainly not be contended, that in case of an administrator or executor having returned an inventory of all such goods, chattels, and credits of the deceased, as had come to his knowledge at the time of rendering the same to the court, and he should subsequently discover other assets, part and parcel of the goods and chattels of the deceased at the time of his death, and he should report the same to the court in an additional inventory, that, in such case, he would not be entitled to commissions for administering the newly discovered assets embraced in such additional inventory.

The case supposed is entirely parallel to the present. The administrator could not, in the present case, discover the additional chattels until they were in existence; and they were not in existence until after the sale, and the bonds taken by him for the purchase money; then, as before stated, he was bound, both by his oath and bond, to report the same to the court, to make the original inventory a true and perfect one. But it will

Shurtliff *v.* Witherspoon.

be contended, that the legislature having used the term appraised value, " that the probate court, in making an allowance to an executor or administrator, is limited to the express letter of the statute, and cannot allow commissions on the amount of any chattels which have not been regularly appraised by commissioners appointed for that purpose, and rendered to the probate court as the inventory of the personal estate of the deceased." We hold the contrary, and contend that such a construction would sacrifice the law to its letter. We ask, what was the intention of the legislature, as derived from the law itself, in authorizing the orphans' court to allow an executor or administrator commissions? The question is best answered in the words of the statute : to allow him such compensation as should appear to said court reasonable and just, for his trouble in administering the estate of the testator or intestate. Statutes are always to be construed so as to arrive at the intention of the legislature. Every rule of construction is but a medium through which, or a process by which, that intention is arrived at; and that intention when fairly ascertained by the court, from signs the most natural and probable, is to be regarded as the law. The intention of the legislature is the spirit of the law. The spirit of the law is the law; and the spirit of the law last recited, is, to allow an executor or administrator a reasonable and just compensation for his trouble in administering the estate of the testator or intestate. " It is an established rule in the exposition of statutes, that the intention of the lawgiver is to be deduced from a view of the whole and every part of a statute taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of the terms. The reason and intention of the lawgiver will control the strict letter of the law, when the latter would lead to palpable injustice, contradiction and absurdity." Kent's Com. vol.1, p. 462. A matter may be within the letter, yet not within the spirit of the law. In such case, the letter gives way to the spirit, and the matter is not embraced by the law. So also a matter may be within the spirit, yet not within the letter of the law ; and such matter is embraced by the law. Bac. Abr.

For the letter shall not be used to destroy the spirit which is the life. Furthermore, the object of the legislature was not to allow a compensation to the executor or administrator, for administering part of the estate—for that portion only which should be appraised by commissioners—but for administering all the goods, chattels, and credits of the deceased which come to his hands to be administered, and which are comprehended under the word " estate " used in the statute.

The words " appraised value of the estate," is used in that part of the section which restricts the discretion of the orphans' court to not less than five, nor exceeding ten per cent. The words are a portion of the restraining clause of the section: " A saving clause in a statute is to be rejected when it is repugnant to the purview or body of the act, and could not stand without rendering the act inconsistent and destructive of itself." Kent's Com. 1 vol. p. 462. It may be contended that the words amount to a proviso; but the unreal distinction between a saving clause and a proviso in a statute, no longer exists. Ib. 463. The saving, in this case, according to the construction given by the court below, is directly repugnant to the purview of the act, to allow an executor or administrator a just and reasonable compensation for his trouble in administering all and singular, the goods, chattels, and credits of the testator or intestate; the construction of the court below is, therefore, inconsistent, destructive of the express intention and spirit of the law, and must, therefore, be rejected. If the construction be correct, then the saving clause itself must be rejected for the same reason.

Again, the word " appraised, is not a term of art; it has no technical meaning, and is, consequently, to be taken according to its natural and ordinary signification and import." Ib. 462. We ordinarily and naturally understand, that, when a thing is appraised, its value is ascertained. And this was, doubtless, the sense in which the legislature used the term; because the sense is entirely consistent with their expressed intention of allowing an executor or administrator a reasonable and just compensation for his trouble in administering the estate of the testator or intestate. For then it would include all

chattels of every description, whether money or promissory notes, which should come to the knowledge of the court by an inventory, but which are never appraised by commissioners. According to the doctrine contended for in support of the decision of the court below, if a man was to die leaving no personal property whatever, but leaving real estate amounting to many millions of dollars, which, by his will, he should direct to be sold by his executor in a given way, and the proceeds thereof invested in bank stock or other personal property, in such manner as the executor might deem most advantageous to his children, who, we will suppose to be very young at the time of the death of the testator, so that the executor might be fifteen or twenty years executing the will; and when he came to make his final settlement, forsooth he could not receive any compensation whatever for the work and labor, care and diligence of half a lifetime spent in the management of the estate, because the property embraced by the will, was neither negroes, horses, cows, beds, and such like chattels, whose value has to be ascertained by appraisement of commissioners appointed for that purpose. Such would be the result of the literal application of the statute limiting the probate court to an allowance of commissions alone on such chattels as required the appraisement of commissioners to ascertain their value—a construction which would be so flatly absurd and unjust, that the very end, design, and spirit of the law to allow an executor or administrator a just and reasonable compensation for his trouble in administering the estate, would be defeated; and the construction must therefore be rejected, because "the letter of the law would lead to palpable injustice, contradiction and absurdity." 1 vol. Kent's Com. 462. The object of appraising property, is, to inform the probate court the kind of property, which are the chattels and their respective value, that the extent of the accountability of the executor or administrator may be known to the court and all persons interested. Bonds, notes, accounts, and money showing their value on their face, their amount is to be ascertained by addition and not by appraisement. When

land has been sold, as in this case, its value is better known by the sale than by appraisement;. hence, an appraisement of it by commissioners would be an act of supererogation.   The value thereof being known, by the account rendered of the sale, the ascertained value is effectively the appraised value; therefore no advantage can be taken in the question before the court, of the land or its proceeds not being appraised by commissioners.   The legislature never intended to discriminate in its allowance so as to allow an executor or administrator commissions on one part of the chattels administered, to wit: the part appraised by commissioners, and none on the other chattels with which he has, probably, had as much trouble.   There is no reason for such discrimination; and the court cannot, in the absence of a sound reason, legally impute such an intention to discriminate to that body.

But, if we are mistaken in this view of the statute, we then claim a reversal of the decision of the court below on the literal meaning of the words " appraised value of such estate;" as no particular appraisement or mode of appraisement is referred to, we are entitled to that which we have not been allowed commissions on, the appraisment contemplated by the law, and made by every executor or administrator at the time he gets the order of the probate court to sell the lands of the deceased for the payment of the debts; for he has to render an estimate of the land to the court to enable the court to arrive at the conclusion what portion of the lands, whether all or part; and, if a part, what it is necessary to sell in order to pay the debts of the deceased?   See How. &. Hutch. Dig. p. 407–8, § 76–7.

The court will perceive from the bill of exceptions embraced in the record, that the court below did not refuse to allow the appellant commissions on the sale of the real estate, because it did not deem the appellant deserving of an allowance thereon for his trouble in administering the estate, but because that tribunal did not consider itself possessed of any legal authority to make the allowance.   If this court should reverse the decree of the probate court, then, whether we shall be allowed one or ten

per cent. commissions on the $9001, the amount of the sale of the real estate will be a new and different question for the exercise of the sound discretion of that tribunal.

*R. W. Webber*, for appellee.

The record shows that the appellant was the administrator in chief of James A. Witherspoon, deceased; that Elias Witherspoon, deceased, at the time of his death, was his sole heir, and the appellee is his widow; that said appellant sold the real estate of said James A. Witherspoon, by order of court; he made a final settlement of his accounts as administrator, to the correctness of which no objection was made; he claimed an allowance of commissions on the amount of the sales of the real estate, to which allowance said appellee objected and was sustained, and he was only allowed commissions on the amount of the inventory of the personal estate, &c.

The question presented, is, as to the correctness of that decision.

It is contended by the appellee, that the appellant is not entitled by law to commissions on the amount of the proceeds of the real estate, but only on the appraised value of the personal estate; and this is deemed to be the only question in this case. See How. & Hutch. Dig. § 415, § 101.

Mr. Justice CLAYTON delivered the opinion of the court.

The only point involved in this cause, is, whether upon a final settlement of his account, an administrator is entitled to commissions upon the amount of sales of real estate, sold by him under an order of the probate court, and accounted for by him, or whether his compensation is to be limited to the appraised value of the property contained in the inventory.

This precise question was considered by this court in the case of *A. P. Merrill* v. *R. Moore's heirs*, Op. book, p. 325; and it was then decided that the allowance should be made to extend to the whole estate administered, and not confined to the portion which had been appraised. And it was determined that the

Shurtliff *v.* Witherspoon.

administrator should be allowed commissions on the sales of the real estate.  We see no reason to depart from this rule.

In the case now before us, the allowance was refused;  and as this is contrary to the rule, as laid down heretofore by this court, the judgment in this instance must be reversed.